# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 17-1388V
(Not to be published)

```
* * * * * * * * * * * * * * * * * * * * * * * * *
NICHOLE WAGNER,                 *
                                *        Special Master Corcoran
                                *
                                *        Filed: June 4, 2019
                                *
                Petitioner,     *
        v.                      *
                                *        Motion for Reconsideration; Six-Month
                                *        Severity Requirement.
SECRETARY OF HEALTH             *
AND HUMAN SERVICES,             *
                                *
                Respondent.     *
                                *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

*Ronald C. Homer*, Conway, Homer, P.C., Boston, MA, for Petitioner.

*Debra A. Begley*, U.S. Dep't of Justice, Washington, DC, for Respondent.

## ORDER DENYING MOTION FOR RECONSIDERATION[1]

On September 29, 2017, Nichole Wagner filed a petition seeking compensation under the National Vaccine Injury Compensation Program ("Vaccine Program").[2] ECF No. 1. Petitioner alleged that the influenza vaccine she received on October 29, 2014, caused her to develop a variant of Guillain-Barré syndrome ("GBS"), presenting primarily as facial diplegia (paralysis). *Id.* at 1.

---

[1] Although it is not specifically designated "for publication," this Order will be posted on the Court of Federal Claims's website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012)). **This means that the Decision will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Order's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Order will be available to the public in its current form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended, 42 U.S.C. §§ 300aa-10 through 34 (2012) [hereinafter "Vaccine Act" or "the Act"]. Individual section references hereafter will be to § 300aa of the Act.

Respondent subsequently filed a Rule 4(c) Report, asserting that Petitioner could not satisfy the statutory prerequisite that her vaccine-related injury or the residual effects thereof lasted for more than six months after vaccination. Rule 4(c) Rep. at 8–9, filed Aug. 29, 2018 (ECF No. 29) (citing Section 11(c)(1)(D)). On these grounds, Respondent moved to dismiss Petitioner's claim. *Id.* at 9. Petitioner opposed dismissal in a brief filed on January 28, 2019 (ECF No. 45) ("Opp."), and Respondent filed a Reply on March 28, 2019 (ECF No. 47). After reviewing these filings, as well as all medical records, affidavits, and other evidence, I dismissed Petitioner's claim in a Decision dated May 8, 2019 (ECF No. 48) ("Decision").

Petitioner now moves for reconsideration of the Decision, arguing that I improperly failed to consider (or give proper weight to) evidence establishing that she had satisfied the six-month severity requirement. Pet'r's Mot. for Recons., filed May 29, 2019 (ECF No. 49) ("Mot."). Specifically, Petitioner asserts that she provided affidavit testimony and social media evidence demonstrating that sequelae of her facial diplegia continued for more than six months after onset, and that I did not adequately consider this evidence when dismissing her case. *Id.* at 6–10.

**Standards for Reconsideration**

Vaccine Rule 10(e) provides that either party may seek reconsideration of a special master's decision within twenty-one days after the decision's issuance. Special masters have the discretion to grant a motion for reconsideration if to do so would be in the "interest of justice." Vaccine Rule 10(e)(3).

As noted by another special master, "there is a dearth of law interpreting Vaccine Rule 10(e)(3)," save for the conclusion that (as the rule itself makes clear) it is within the special master's discretion to decide what the "interest of justice" is in a given case. *R.K. v. Sec'y of Health & Human Servs.*, No. 03-632V, 2010 WL 5572074, at *3 (Fed. Cl. Spec. Mstr. Jan. 10, 2011) (granting reconsideration of decision dismissing case for failure to prosecute). Many decisions assume that the standard for reconsideration is congruent with the "manifest injustice" standard utilized under Rule 59(a) of the Rules of the Court of Federal Claims, which has been defined as "clearly apparent or obvious" unfairness. *Amnex, Inc. v. United States*, 52 Fed. Cl. 555, 557 (2002); *see also R.K.*, 2010 WL 5572074, at *3–5 (citations omitted).

I have previously permitted reconsideration when the movant provided new, relevant evidence that would have borne on my initial decision had it been previously available. *See, e.g.*, *Rodriguez-Luna v. Sec'y of Health & Human Servs.*, No. 15-496V, 2018 WL 774256, at *2 (Fed. Cl. Spec. Mstr. Jan. 3, 2018) (granting motion for reconsideration of final attorney's fees and costs decision when petitioner submitted previously-unfiled billing records). By contrast, I have denied reconsideration requests where the movant simply disagrees with my initial decision (including how I weighed the evidence), and has otherwise offered no truly "new" evidence. *See, e.g.*, *D'Tiole v. Sec'y of Health & Human Servs.*, No. 15-085V, 2016 WL 8136296 (Fed. Cl. Spec. Mstr. Dec. 21, 2016), *mot. for review denied*, 132 Fed. Cl. 421 (2017), *aff'd*, 726 F. App'x 809

(Fed. Cir. 2018); *Kerrigan v. Sec'y of Health & Human Servs.*, No. 16-270V, 2016 WL 7575240 (Fed. Cl. Spec. Mstr. Nov. 22, 2016).

**Petitioner Has Not Established Grounds for Reconsideration**

In my Decision, I determined that the record best supported the conclusion that the ongoing symptoms Petitioner experienced in the years following vaccination—which included numbness, tingling, and paresthesia in her extremities—were most likely the result of vitamin B6 toxicity (as stated by her treating neurologist) rather than sequelae of her GBS, which involved only facial diplegia. *See* Decision at 8. Thus, I took into account Petitioner's contentions that she *did* experience some symptoms more than six months post-vaccination (as evidenced by her witness statements and social media evidence), but found that these symptoms were *not* sequelae of her alleged vaccine-caused injury.

Petitioner has not offered any new evidence or law that would have been relevant to my original decision had it been available at the time of dismissal. Instead, she argues that the record included evidence of sequelae of her diplegia (specifically, an intermittent facial twitch or spasm), pointing not to medical record evidence (which she admits does not set forth any complaints of such symptoms), but instead her own witness statements about lingering symptoms as well as social media posts that she filed earlier this year (Exhibit 28).

The only allegation of a symptom arguably associated with the GBS variant experienced by Petitioner that could have occurred later than January 30, 2015 (three months after onset) was an intermittent facial spasm, which Petitioner argues is corroborated by a post from her Facebook account on October 17, 2017, as well as her own sworn statement. Mot. at 9 (citing Ex. 28 at 36, filed Jan. 29, 2019 (ECF No. 46-1); Ex. 30 at 5–6, filed Jan. 28, 2019 (ECF No. 42-3)). I did in fact consider such evidence, noting in the Decision that the record as a whole (which included witness statements) did not preponderantly establish severity—although (consistent with the scope of Petitioner's argument at the time) my focus was on any sequelae that could arguably be attributed to her GBS broadly. *See* Decision at 9; Opp. at 19 (asserting that Petitioner "presented with GBS that resulted in facial paralysis, *hand weakness and neuropathy in her lower extremities*," thus satisfying the severity requirement (emphasis added)). As previously noted, the ongoing extremity symptoms Petitioner experienced were later determined to be the result of vitamin B6 toxicity, and nothing in Petitioner's reconsideration request suggests grounds for finding that determination to be erroneous (or offers new evidence or law pertinent to it).

However, my analysis would not change even if consideration had been limited to sequelae relevant to Petitioner's facial diplegia only. The record (as reflected in medical treatment records and the statements of neurology specialists) preponderantly establishes that Petitioner's facial diplegia had largely resolved in early 2015. *See* Ex. 4 at 2 (treating neurologist stating that Petitioner was "almost fully recovered" on January 30, 2015). Subsequent social media posts filed by Petitioner make no reference to any lingering facial symptoms. *See* Ex. 28 at 1063 (Petitioner's

February 8, 2015 Facebook post: "I pretty much have all use of my muscles now from what I can feel. They feel tight sometimes and I'm still have [*sic*] some after effects in my legs and arms-weird things going on like tingling and muscle spasms, but nothing compared to what it was like to be paralyzed"). And, as discussed in the original dismissal decision, the relevant GBS variant in this case would not medically be *expected* to involve symptoms that would persist for months after initial presentation. Decision at 9. Again, no new evidence (in the form of record proof or medical/scientific literature) has been offered on this point as a basis for reconsideration.

Petitioner points to a social media post from October 2017 as evidencing diplegia-specific sequelae occurring well after expiration of the six-month period measured from onset. Mot. at 9 (citing Ex. 28 at 36). Petitioner is correct that such evidence is entitled to *some* weight, especially since it does not directly contradict the medical record. However, this does not mean that such evidence preponderated in her favor on the issue of severity. For there are many reasons *not* to give this single piece of evidence (which is the only social media post she identified in her reconsideration request) the weight urged. First, it is not *corroborated* by the record, which (as discussed above) strongly supported the conclusion that her face-related symptoms had ended in early 2015, with no further efforts by Petitioner to seek treatment for them. Second, the post in question was made *after* this case was filed in September 2017, greatly reducing its probative value. *See Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (crediting special master's decision to find contemporaneous medical records more probative than witness statements made later in time).

I also do not find that the witness statements in the record, which also support her claim of an intermittent facial twitch post-dating primary resolution, are enough to meet Petitioner's burden. *See, e.g.*, Ex. 12 at 7, filed Oct. 10, 2017 (ECF No. 9-1); Ex. 30 at 5–6. As established by the medical literature Petitioner herself filed, her GBS variant involves only facial *paralysis* and appears to resolve quickly, without any expected ongoing secondary symptoms. *See* Decision at 9 (citing T. Ramakrishnan, et al., *Facial Diplegia: A Misleading GBS Variant*, 3 J. Case Reps. 267 (2013), filed as Ex. 31, Jan. 28, 2019 (ECF No. 43-1); N. Sethi, et al., *Facial Diplegia with Hyperreflexia—A Mild Guillain-Barre Syndrome Variant, to Treat or Not to Treat?*, 2 J. Brachial Plexus & Peripheral Nerve Injury 9 (2007), filed as Ex. 32, Jan. 28, 2019 (ECF No. 43-2)).

Ultimately, Petitioner's request for reconsideration reflects disagreement with the outcome—an insufficient basis for reconsideration. She has offered no new evidence or other compelling argument demonstrating that the interests of justice would be best served by reconsideration of my May 8, 2019 Dismissal Decision. I hereby **DENY** the motion for reconsideration.

**IT IS SO ORDERED.**

s/ Brian H. Corcoran
Brian H. Corcoran
Special Master